UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　Case No. 18-20467
　　　　　　　　　　　　　　　　　　　　　　　　HON. AVERN COHN
NABOR ACOSTA-BARRERA,
ALBERTO FLORES-HERNANDEZ,

    Defendants.
_____/

# MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTIONS TO SUPPRESS (Docs. 23, 24)

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

I. Introduction

This is a criminal case. Defendants Nabor Acosta-Barrera (Acosta-Barrera) and Alberto Flores-Hernandez (Flores-Hernandez) are charged in a one count indictment with conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). The indictment is the result of evidence seized during the execution of a search warrant at 26069 Shirley Lane in Dearborn Heights, Michigan.

Before the Court is defendants' motions to suppress on the grounds the affidavit accompanying the application for search warrant was not supported by probable case. Particularly, defendants contend that the affidavit fails to establish a nexus between Shirley Lane and criminal (drug) activity. Defendants also seek suppression, as fruits of the poisonous tree, the evidence obtained during the execution of the search warrant (two kilograms of heroin, two kilograms of fentanyl and $57,980 in cash). For the reasons that follow, the motions are GRANTED.

II. Background

A. General

On May 4, 2018, a judicial officer of the 36th District Court in Detroit authorized a search warrant for the Shirley Lane residence. The application for the search warrant was supported by the affidavit of Detroit Police Officer Nicholas Bukowski. On the same day the search warrant was executed by DEA agents and Detroit Police Task Force Officers. Evidence of drug activity was found and seized.

The suppression motions are fully briefed and were the subject of two hearings. The papers consist of the following:

1

Acosta-Barrera's motion (Doc. 23)

Flores-Hernandez's motion (Doc. 24)

The government's combined response (Doc. 28)

The government's supplemental brief (Doc. 32)

The government's second supplemental brief (Doc. 34)

Flores-Hernandez's reply (Doc. 36)

Acosta-Barrera's reply (Doc. 37).

B. The Affidavit

The affidavit states in relevant part (with portions relating to Shirley Lane in bold):

1. This investigation stems from an investigation into Victalino Alvares-Torres, a known drug trafficker.

2. On November 2, 2017, affiant received a court order requesting locational data for the phone number (517) 617-1320 to identify the holder of the phone based on information from the DEA that this number was contacting a suspected source of heroin in Mexico.

3. On November 7, 2017, DEA Agent Stachecki located a red Chevy Tahoe that he believed was being utilized by the holder of the target phone. The vehicle was registered to German Heredia, a previously deported criminal alien. At this time, affiant learned that the target phone was registered to Victalino Alvares-Torres.

4. On November 10, 2017, Agent Stachecki obtained a search warrant authorizing the placement of a GPS device on the Tahoe.

5. Between November 10 and 13, 2017, the phone and Tahoe were in Chicago, IL; Fort Wayne, IN; and Battle Creek, MI. It was common for the vehicle to make short stops in different areas of these locations, consistent with information about the distribution of drugs in Chicago, IL.

6. On November 13, 2017, Agent Stachecki witnessed a Hispanic male stop at 198 Graves St., Battle Creek, where he removed a large box form the trunk of the Tahoe and carried it into the location. About five minutes later, he came back out of the

2

location and loaded the box back into the Tahoe and left. Agent Stachecki followed the Tahoe until it was stopped by Michigan State Police. Upon the stop, the driver was identified as Victalino Alvares-Torres. Inside the box was a small air compressor with a hidden compartment containing a large amount of U.S. currency which was seized by the DEA as suspected narcotics proceeds. Torres was released from the scene.

7. Data from the phone indicated that Torres continued to communicate with numerous numbers outside the U.S. and Mexico, in addition to multiple states within the U.S. Torres communicates with these numbers for a short time before the contact ceases. Based on affiant's training and experience, this type of phone activity is indicative of a narcotics courier who contacts a customer to arrange a transaction. Once the transaction has taken place, the contact ceases.

8. On May 3, 2018, DEA agents from Chicago completed a traffic stop of a vehicle in which Torres was seen entering drive by an unidentified subject. Upon completion of the stop, DEA agents recovered a bag containing a large amount of U.S. currency. The DEA agents identified driver as Nabor Acosta-Barrera, a Mexican national believed to be in the country illegally. **The vehicle Acosta-Barrera was driving was registered to him at 26069 Shirley Lane, Dearborn Heights, MI.** The DEA agents seized the currency as suspected narcotics proceeds and searched the remainder of the car finding a MoneyGram along with a ledger outlining several money pickups and relating those pickups to Mexico and a possible recipient's phone number.

9. According to DEA agents, Alvares-Torres told Agents that he was meeting with the driver of the vehicle (Acosta-Barrera) to drop off money. The agents also informed affiant that the driver, Acosta-Barrera, made an unprovoked statement concerning the DEA agents following the "guy" who was dropping off the money (referencing Alvares-Torres).

10. The MoneyGram was addressed to a location in Harvey, IL. DEA agents searched that location and found a large bag containing U.S. currency.

11. DEA Chicago searched the Warrenville, IL home of Alvares-Torres which resulted in the seizure of a large sum of suspected cocaine and methamphetamine.

12. Based on the above seizures, affiant can confirm that Alvares-Torres is a narcotics trafficker involved in the transportation and distribution of narcotics and narcotics proceeds in the Michigan and Illinois area.

13. **Further investigation of Acosta-Barrera revealed that he is connected with a utility listing at 26069 Shirley Lane, Dearborn Heights, MI.**

14. **On May 3, 2018, Agents from DEA Detroit set up surveillance of 26069 Shirley Lane, Dearborn Heights, MI. Per Agent Stachecki, there were no vehicles at the location and there appeared to be several shipping notifications on the front door of the location, as if it had not been visited in a few days**.

15. **On May 4, 2018, Agent Stachecki confirmed with DTE Energy that Acosta-Barrera is currently paying utilities at the Shirley Lane residence, and that he used his passport to initiate the account**.

16. **Agent Stachecki unsuccessfully attempted to contact the owners of the home but was later called by Hassan Hamade who claimed to be the attorney for the owners of the Shirley Lane residence. He informed the agent that Acosta-Barrera rents the location but pays in cash and there is no rental contract available**.

17. Due to the recovery of the U.S. currency and ledgers in conjunction with the verbal statements made by both Alvares-Torres and Acosta-Barrera, Affiant believes that Acosta-Barrera is a money courier for a major Drug Trafficking Organization.

18. **Through Affiant's training and experience, affiant believes that 26069 Shirley Lane is a stash house for U.S. currency generated from a Major Drug Trafficking Organization. Affiant also believes there will be records of money transactions in this location.**

III.  Parties' Arguments

Both defendants' motions center on the argument that the affidavit lacks a description of evidence to establish a nexus between Shirley Lane and defendant's status as a drug/money courier or suspected criminal activity.  Defendants also contend that the good faith exception does not apply because the affidavit is so lacking in probable cause.  Defendants say that the affidavit contains no facts about Acosta-Barrera other than the contents of his vehicle and his tenancy at Shirley Lane.  The

4

affidavit never places either defendant at or near Shirley Lane.  Additionally, the affidavit describes no activity at all—criminal or innocent—at Shirley Lane.

The government argues that there was probable cause, i.e. a fair probability, that drugs and money ledgers would be found at Shirley Lane.  The government contends that there are sufficient details in the affidavit which, under the totality of the circumstances, supports probable cause.  The government argues the fact that Alvares-Torres is a known drug trafficker and defendants were connected to him and found with evidence of drug activity him is sufficient to support a fair probability that evidence or contraband would be found at Shirley Lane.  In sum, the government says there is a nexus between defendants' status as a drug/money courier and Shirley Lane.

Further, the government argues that even if the affidavit is found to be deficient, the law enforcement officers relied in good faith on the issuance of the warrant and so the good faith exception should apply.

IV.  The Law

The law is well settled.  Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  "[S]o long as the magistrate had a 'substantial basis for … conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more."  Illinois v. Gates, 462 U.S. 213, 236 (1983) (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).  To conclude that an affidavit establishes probable cause,

the issuing judge must find that "given all the circumstances set forth in the affidavit … there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238.

To meet the nexus requirement of probable cause, "the circumstances must indicate why evidence of illegal activity will be found in a particular place." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). In other words, "the affidavit must suggest 'that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of the property is suspected of a crime.' "United States v. McPhearson, 469 F.3d 518, 524 (6th Cir. 2006) (quoting Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)). "There must, in other words, be a nexus between the place to be searched and the evidence sought." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).

Regarding known drug dealers, the Sixth Circuit has said:

> We have acknowledged that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." United States v. Jones, 159 F.3d 969, 975 (6th Cir. 1998) (citation omitted). Thus, in some cases, we have permitted judges to infer a fair probability of finding evidence in a residence even though the affidavit did not state that such evidence had been observed directly. See, e.g., id. at 974–75. We have never held, however, that a suspect's "status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." United States v. Frazier, 423 F.3d 526, 533 (6th Cir. 2005). Rather, we have required some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, we have required facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence. Compare Jones, 159 F.3d at 974–75 (finding probable cause to issue a warrant where confidential informant made drug purchases from defendant, was at defendant's residence during monitored drug transactions, and observed defendant in

6

possession of cocaine), United States v. Ellison, 632 F.3d 347, 349 (6th Cir. 2011) (inference was proper because reliable confidential informant had "observed someone come out of [the defendant's] residence, engage in a drug transaction, and then return into the residence"), and Berry, 565 F.3d at 339 ("Although a defendant's status as a drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in defendant's home, there is support for the proposition that status as a drug dealer plus observation of drug activity near defendant's home is sufficient to establish probable cause to search the home." (internal citation omitted)), with Frazier, 423 F.3d at 532 (inference was not proper because affidavit failed to establish informants' reliability and informants had not "witnessed [the defendant] dealing drugs from his [new] residence," just his old residence).

United States v. Brown, 828 F.3d 375, 383-84 (6th Cir. 2016) (footnote omitted).

## V.  Discussion

### A.  Probable Cause

#### 1.  Facts/Inferences

In an attempt to tie Shirley Lane to drug activity it is helpful to examine the evidence described in the search warrant and the inferences the government says are to be drawn from that evidence.  This is set forth below.

**EVIDENCE TYING ACOSTA-BARRERA to DRUG ACTIVITY**

FACT:  Acosta-Barrera was stopped with a known drug trafficker in his car (Alvarez Torres) with a large amount of cash, a MoneyGram receipt and what appeared to be a ledger of transactions

INFERENCE: Acosta-Barrera is involved in drug trafficking with Alvarez Torres

**EVIDENCE TYING SHIRLEY LANE TO ACOSTA BARRERA**

FACT:  Acosta Barrera had car registered to Shirley Lane

Utility bills for Shirley Lane are in Acosta Barrera's name

An attorney for landlord confirmed that Acosta Barrera pays the rent in cash and does not have a rental contract

7

INFERENCE: Acosta Barrera resides at Shirley Lane

**EVIDENCE TYING FLORES-HERNANDEZ TO DRUG ACTIVITY**

FACT: Flores-Hernandez was stopped with a known drug trafficker in a car (Alvarez Torres) with a large amount of cash, a MoneyGram receipt and what appeared to be a ledger of transactions

INFERENCE: Flores-Hernandez is involved in drug trafficking with Alvarez Torres

**EVIDENCE TYING SHIRLEY LANE TO FLOREZ-HERNANDEZ**[1]

FACT: An attorney for the owner of Shirley Lane was interviewed by DEA agents and informed them that another older Hispanic male matching Flores-Hernandez's description resides with Acosta-Barrera at Shirley Lane

The owner of Shirley Lane gave a description of Flores-Hernandez to DEA agents and picked him out from a photo line up as residing at Shirley Lane

INFERENCE: Flores-Hernandez resides at Shirley Lane

**EVIDENCE TYING SHIRLEY LANE TO DRUG ACTIVITY**

FACT: Surveillance showed no other vehicles present at the home and several shipping notices were stuck on the door

INFERENCE: Shirley Lane is a stash house where evidence of drug activity will be found

2. The Problem

There are no facts which tie Shirley Lane to drug activity other than it is where likely drug dealers reside. The surveillance only showed a home with no cars and

---

[1]The government argues that Flores-Hernandez lacks standing to challenge the search warrant because he did not have a reasonable expectation of privacy in the Shirley Lane residence. In response, Flores-Hernandez contends that the record contains sufficient evidence connecting Flores-Hernandez to Shirley Lane, including the government's assertion that the money seized came from his bedroom, to show he had an expectation of privacy. The Court agrees with Flores-Hernandez for all the reasons described in Flores-Hernandez's response and above.

8

shipping notices. Simply because Shirley Lane has shipping notices - which may indicate no one has been at the location for a while - is not evidence of illegal activity. There was no observation of criminal activity at Shirley Lane. Indeed, there was no observation of anything happening at Shirley Lane. No unusual activity was seen at all.

### 3. Conclusion

The affidavit is not supported by probable cause. Even accepting that defendants are "known drug dealers," the affidavit lacks any evidence of drug trafficking activity at Shirley Lane. Agents surveilled the residence and observed shipping notifications on the front door and it appeared unoccupied. This is not evidence of drug trafficking activity. The fact that Acosta-Barrera paid the utility bills for the address and his car was registered to this address and paid for the residence in cash with no rental contract is not evidence of drug trafficking activity. Even accepting Officer Bukowski's belief that it is common for drug traffickers to keep residences as stash houses for cash and drugs, the law clearly requires some observed evidence of drug activity at a location to obtain a search warrant. Here, there was an absence of any activity, criminal or otherwise at Shirley Lane. The information in the affidavit regarding Shirley Lane is simply insufficient to establish probable cause for a search warrant.

### B. Good Faith

At oral argument, the government argued that this was an ideal case to apply the good faith exception of United States v. Leon, 468 U.S. 897 (1984). Under Leon, the exclusionary rule does not bar from admission "evidence seized in reasonable,

good-faith reliance on a search warrant that is subsequently held to be defective." Id. at 905.  An affidavit is "bare bones" where it merely "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge."  United States v. Washington, 380 F.3d 236, 241 n.4 (6th Cir. 2004) (quoting United States v. Van Shutters, 163 F.3d 331, 337 (6th Cir. 1998)).  The Sixth Circuit has also said that, to be considered bare bones, an affidavit must be "so lacking in indicia of probable cause" as to make an officer's "belief in its existence [ ] objectively unreasonable."  United States v. Laughton, 409 F.3d 744, 748 (6th Cir. 2005).

The government submitted as supplemental authority for its good faith argument the Sixth Circuit's recent decision in United States v. Christian, 925 F.3d 305 (6th Cir. 2019) (en banc).  In Christian, the defendant challenged a search warrant for his residence at 618 Grandville in Grand Rapids.  Defendant was a known drug trafficker.  The majority opinion found that the affidavit was supported by probable cause because of the following factual assertions:

1. Defendant was a known drug trafficker, having 4 drug convictions over the past 19 years and 2 of which were from drugs found at the Grandville residence (in 2009 and 2011)

2. A confidential informant purchased drugs from the Grandville residence 9 months earlier

3. Within the past 4 months, several "subjects" told the officers that they had purchased "large quantities" of drugs from defendant at the Grandville residence

4. On the day of the search, officers stopped a third party, Rueben Thomas, after they saw him leave the "area of" the Grandville residence and

discovered 20 grams of heroin in Thomas' car

A concurring opinion concluded that probable cause was lacking but the good faith exception applied. A dissenting opinion concluded that the affidavit failed to establish probable cause and that the good faith exception did not save it.

As to good faith, the majority said that the affidavit was not bare bones and had some connection to Grandville and drug dealing and made clear that the exception is a "low bar" and that it meets the exception "when it contains 'some connection' between 'the illegal activity and the place to be searched,' even if that connection is 'remote' and supported by only a slight 'modicum of evidence.'" Id. at 318.

Christian does not support the government's position. First, the affidavit in Christian clearly had more factual allegations tying the residence to drug activity to justify probable cause as found by the majority. It had (1) prior searches where drugs were found, (2) information from others that drugs were purchased there, (3) a confidential informant's statement he purchased drugs there, (4) a recent connection to drugs via Thomas.

As to good faith, while the Sixth Circuit said the exception may be a "low bar" but it is a bar nonetheless. In this case, there is simply no evidence of any illegal activity happening at Shirley Lane. All the government has is (1) defendants were stopped in another state with a known drug dealer with large amounts of cash and other indicia of drug trafficking and (2) each of the defendants have a connection to Shirley Lane.

As to Shirley Lane, officers did not see any illegal activity much less any

11

evidence of drug activity. Rather, they saw an absence of activity - no cars, no people coming in and out, no drug purchases, no confidential informant information, no prior search which showed drugs. Officers simply saw some shipping notices and the residence appeared unoccupied. Again, the fact that a house has shipping notices on it is not evidence of illegal activity.

To be sure, the affidavit contains a lot of detail as to the drug activities of Alvarez-Torres. It contains some detail as to Acosta-Barrera and Flores-Hernandez's connection to drug activities and provides a connection with defendants and Shirley Lane. However, the affidavit has no details which would support a finding that evidence of drug activity will be found at Shirley Lane. The facts related to Shirley Lane are not criminal. In other words, it is "bare bones" as to Shirley Lane. Under these circumstances, the good faith exception does not apply because it is objectively unreasonable to rely on the information as to Shirley Lane to believe that probable cause existed to search the residence.

SO ORDERED.

**CODA**

The Court is mindful that as a result of this decision the government will likely have to abandon the prosecution of this case. However unpleasant that may be, at the end of the day the Constitution and rule of law must prevail. As Justice Brandeis said in his famous dissent in Olmstead:

Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen.  In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously.  Our government is the potent, the omnipresent teacher.  For good or for ill, it teaches the whole people by its example.  Crime is contagious.  If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.  To declare that in the administration of the criminal law the end justifies the means-to declare that the government may commit crimes in order to secure the conviction of a private criminal-would bring terrible retribution.  Against that pernicious doctrine this court should resolutely set its face.

<u>Olmstead v. United States</u>, 277 U.S. 438, 468 (1928) (Brandeis, J., dissenting)

<u>S/Avern Cohn</u>
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 9/3/2019

Detroit, Michigan